# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIDSON DOXY,<br><br>      Petitioner,<br><br> v.<br><br>CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center, GREGORY ARCHAMBEAULT, Director, San Diego Field Office, U.S. Immigration and Customs Enforcement, PAM BONDI, Attorney General, U.S. Department of Justice, and KRISTI NOEM, Secretary, U.S. Department of Homeland Security<br><br>      Respondents. | Case No.: 3:25-cv-02609-BTM-DDL<br><br>**ORDER CONDITIONALLY GRANTING PETITION FOR THE WRIT OF HABEAS CORPUS**<br><br>**[ECF NO. 1]** |

  Pending before the Court is Midson Doxy's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated below, the Court CONDITIONALLY GRANTS the petition. The Respondents must properly revoke Doxy's parole or release him from custody.

## I. BACKGROUND

  Doxy arrived in the United States on December 3, 2024, to seek asylum. (ECF No.

1 ("Pet."), 3.) He had fled from Haiti after members of the 400 Mawozo Gang attacked him and "threatened to kill him when he refused to cooperate." (*Id.*) Once Doxy arrived at the San Ysidro Port of Entry, he applied for admission into the United States. (ECF No. 4 ("Return"), 1.) Because he lacked valid entry documents, he was "inadmissible" under 8 U.S.C. § 1182(a)(7)(i)(I). (ECF No. 4.1 ("Decl."), 2.) On December 4, he was given written notice to appear for a removal proceeding under 8 U.S.C. § 1229a. (*See* ECF No. 4.2, Ex. 2.) But that same day, he was provided "humanitarian parole" into the country under 8 U.S.C. § 1182(d)(5)(A). (Decl., 2.) He was issued a Form I-94, an electronic record of his arrival to the United States that listed a departure date two years from then. (Pet., 3.) *See* U.S. Customs & Border Prot., CBP No. 1496-0721, *I-94 Automation Fact Sheet* (2021).

The immigration court held Section 1229a removal proceedings for Doxy over the following months. (Pet., 3.) On June 25, 2025, the Respondents moved to dismiss Doxy's removal proceedings. (Decl., 2.) After moving for dismissal, the Respondents issued a warrant and arrested Doxy. (*Id.*) On June 30, the immigration judge granted the motion to dismiss Doxy's Section 1229a removal proceedings. (*Id.*) Doxy was then placed into expedited removal proceedings pursuant to 8 U.S.C. 1225(b)(1). (*Id.* at 3.)

Doxy remains in custody at the Otay Mesa Detention Center. (Return, 2.) On October 2, 2025, Doxy petitioned the Court for the writ of habeas corpus.

## II.   DISCUSSION

Doxy seeks relief on four grounds. First, he argues that the Respondents exceeded their statutory authority under the Immigration and Nationality Act ("INA") by detaining him under Section 1225(b)(1). (*See* Pet., 4–5.) Second, he argues that the Respondents violated his Due Process rights by not giving him notice and an opportunity to be heard before they detained him. (*See* Pet., 5–6.) Third, he argues that the Respondents violated the Administrative Procedure Act ("APA") by revoking his parole and detaining him without providing a proper explanation for their decision. (*See* Pet., 6–7.) Fourth, he argues that the Respondents violated the Constitution's guarantee of equal protection by

treating him harsher than non-Haitian noncitizens.[1] (Pet., 7.) Doxy also requests "costs and attorneys' fees pursuant to the Equal Access to Justice Act," 28 U.S.C. § 2412. (Pet., 8.)

The Respondents contest the Court's jurisdiction to review the petition. (Return, 3–9.) On the merits, the Respondents argue that Doxy brings improper habeas claims and that he is lawfully subject to mandatory detention under Section 1225(b)(1). (Return, 1–2, 9–13.)

The Court addresses jurisdiction, the claims, and the relief granted in turn.

### A.  Jurisdiction

The Court has long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3); *see* Judiciary Act of 1789, ch. 20, 1 Stat. 73, 81–82. Yet the Respondents argue that the Court lacks jurisdiction over this petition under 8 U.S.C. § 1252(g), § 1252(b)(9), § 1252(a)(2)(A), and § 1252(e).

Subsections 1252(g) and 1252(b)(9) raise the same jurisdictional bars that other decisions in this district have soundly rejected. *See, e.g.*, *Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *3 (S.D. Cal. Sept. 3, 2025). Doxy's INA, Due Process, and APA claims do not ask the Court to review his removal proceedings. Rather, those claims challenge the legality of his detention. They are proper habeas claims. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("While Padilla's detention is undeniably unique in many respects, it is at bottom a simple challenge to physical custody imposed by the Executive—the traditional core of the Great Writ."). The Court therefore adopts the reasoning of the other decisions in this district and finds that neither subsection bars judicial review over those claims.

On the other hand, subsection 1252(g) bars review over Doxy's Equal Protection

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

claim. Doxy contends that the Respondents are "treating [him] differently from other similarly situated non-Haitian parolees" by "singling [him] out" for expedited removal. (Pet., 7.) But this allegation of "disparate treatment" challenges the Respondents' "decision or action" to commence proceedings against him. (*Id.*) 8 U.S.C. § 1252(g). By doing so, Doxy asks this Court to remedy not his detention but "unlawful discrimination." (Pet., 7.) The Court may not review a claim that challenges the decision to select Doxy for expedited removal. Thus, the Equal Protection claim is dismissed for lack of jurisdiction.

The Respondents also argue that subsections 1252(a)(2)(A) and 1252(e) preclude judicial review. The former "comprehensively bars judicial review of matters related to expedited removal orders" under Section 1225(b)(1). *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154 (9th Cir. 2022). The latter "provides only for very limited challenges" to expedited removal proceedings under Section 1225(b)(1) "in an appropriate district court." *Id.* "Congress could scarcely have been more comprehensive in its articulation of the general prohibition on judicial review of expedited removal orders." *Id.* at 1155.

But the Court is not reviewing an expedited removal order. As discussed further on, Doxy's parole is still valid because the Respondents improperly revoked it. This makes Doxy ineligible for expedited removal under Section 1225(b)(1). *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *4 (S.D. Cal. Oct. 1, 2025) ("[E]xpedited removal is further cabined to noncitizens who 1) are categorized as 'arriving in the United States,' or 2) have 'not been admitted or paroled into the United States' . . . ." (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii))). Any application of Section 1225(b)(1) to Doxy is premature. Thus, the Court is not addressing the expedited removal process as it "relat[es] to" or arises "under" Section 1225(b)(1). *See* 8 U.S.C. 1252(a)(1)(A), (e). Because Section 1225(b)(1) is not applicable to Doxy at this stage, neither subsection 1252(a)(2)(A) and 1252(e) bars the Court's review. The Court has jurisdiction to review the remaining claims of Doxy's petition.

## B. Merits

### i. Statutory Claims

Doxy claims that the Respondents violated the APA by failing "to provide any individualized explanation or case-specific justification" for revoking his parole. (Pet., 6.) He also claims that the Respondents "lack[] statutory authority" under the INA to place him in expedited removal while he remains on parole. (Pet., 5.) These legal arguments were addressed in the Court's recent decision, *Arias v. LaRose*, No. 25-cv-02595-BTM-MMP, 2025 WL 3295385 (S.D. Cal. Nov. 25, 2025). The Court adopts *Arias*'s reasoning and applies it to this case.

An agency's action may survive review only if the agency sufficiently explains the action, which includes demonstrating a "rational connection between the facts found and the choice made." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019). Here, the Respondents failed to explain their decision to revoke Doxy's parole.

Although Doxy received written notice that his parole was revoked, the Respondents provided no reasoning that was particular to Doxy. The Notice and Order of Expedited Removal given to Doxy stated that he entered the country "at or near unknown place, on or about unknown date," and that he was "not then admitted or paroled after inspection by an Immigration Officer." (ECF No. 4.2, Ex. 6.) Both statements are untrue: Doxy applied for admission on December 3, 2024, at the San Ysidro Port of Entry and was paroled the next day. The expedited removal notice that Doxy received appeared to be a form notice rather than individualized one.

The Respondents also failed to provide their reasoning when they moved the immigration judge to dismiss Doxy's Section 1229a removal proceedings. Doxy opposed the motion and argued that the Respondents had not articulated a "case-specific changed circumstance." (ECF No. 4.2, Ex. 3.) The Respondents responded that the "changed circumstance is a change in policy and an expansion in the expedited removal program." (*Id.*) The Respondents' claim that expedited removal is a "more efficient use of resources"

did not reflect an individualized determination that Doxy's parole should be revoked. For the same reason discussed in *Arias*, Doxy's parole was improperly revoked:

> The Respondents failed to demonstrate that their revocation of [Petitioner's] parole was the product of reasoning decisionmaking. By denying [Petitioner] "the required procedure before purporting to terminate [his] parole, Respondents acted arbitrarily and capriciously and violated the APA." That revocation action caused [Petitioner] to be improperly detained.

2025 WL 3295385, at *4 (quoting *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025)).

Furthermore, because Doxy's parole was improperly revoked and is still valid, he cannot be placed in expedited removal proceedings. Noncitizens "arriving in the United States" and others who, among other requirements, "have not been admitted *or paroled*" may be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i), (iii) (emphasis added). Once a noncitizen is granted parole, he is "returned to the custody from which he was paroled" once "the purposes of such parole shall, in the opinion of the Attorney General, have been served." 8 U.S.C. § 1182(d)(5)(A). In other words, Section 1225 cannot apply to a noncitizen on valid parole. And if a noncitizen is to be returned to the "custody from which he was paroled"—reverting to the preparole legal status he held when entering the country—the government must show that the purposes of the noncitizen's parole have been served.

The Respondents failed to do so here when they did not explain their reasons for revoking Doxy's parole. As a result, Doxy's parole remains valid, precluding Section 1225(b)(1) from applying to him. The Respondents lack the statutory authority under the INA to detain Doxy for expedited removal proceedings. Under both the APA and the INA, Doxy is entitled to the writ of habeas corpus.

### ii. Due Process Claim

Doxy also claims that the "abrupt termination of his [Section 1229a] proceedings, his reclassification into expedited removal, and his ongoing indefinite detention without a bond hearing" violate the Due Process Clause. (Pet., 6.) This legal argument was

addressed in the Court's recent decision, *Araujo v. LaRose*, No. 25-cv-2942-BTM-MMP, 2025 WL 3278016 (S.D. Cal. Nov. 24, 2025). The Court adopts *Araujo*'s reasoning and applies it to this case.

The Fifth Amendment entitles noncitizens "to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Due Process for parole terminations requires "(1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Araujo*, 2025 WL 3278016, at *2.

Here, the Respondents did not revoke Doxy's parole according to due process of law. As discussed earlier, the Respondents failed to show that they made an individualized determination before revoking Doxy's parole. Although the Notice and Order of Expedited Removal appeared to be written notice that Doxy's parole was revoked, the notice provided no reasons specific to Doxy. He has also not received an opportunity to respond to the revocation of his parole. Even if the Respondents had provided an opportunity, Doxy would be unable to rebut the reasons for his parole's revocation because he was not given any reasons for it. The Respondents violated Doxy's right to Due Process independent of his statutory claims.

### C.    Relief

The Respondents note that a U.S. Citizenship and Immigration Services asylum officer interviewed Doxy and issued a negative credible-fear finding. (Decl., 3.) This finding was affirmed by an immigration judge. (*Id.*) Also, there is no record of any appeal or further proceedings regarding Doxy's claim for asylum. Given these circumstances, the writ of habeas corpus will issue conditionally. *See* 28 U.S.C. § 2243 (The court shall . . . dispose of the matter as law and justice require."); *cf. Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) ("[A] court may issue a conditional writ that requires the state to release a petitioner unless it takes some other remedial action, such as retrial of the petitioner.").

The writ will issue to release Doxy from custody unless the Respondents remedy their improper revocation of Doxy's parole.  The Respondents may do so by setting forth a proper revocation from a statutorily authorized official.  The written revocation notice must provide individualized grounds for the termination of Doxy's parole.  The Respondents must also give Doxy an opportunity to rebut the revocation of his parole.

## III. CONCLUSION

The petition for a writ of habeas corpus is **CONDITIONALLY GRANTED** on the first, second, and third claims.  The Respondents must properly revoke Doxy's parole by December 18, 2025, at 12 p.m.  If the Respondents fail to do so, they are ordered to release Petitioner immediately on the preexisting conditions of his supervision of parole that existed before his arrest on June 25, 2025.  The fourth claim is **DISMISSED** for lack of jurisdiction.  The parties shall file a statement as to the satisfaction of the writ by December 19, 2025, at 4 p.m.  The Court retains jurisdiction to enforce the writ.

The Petitioner may move for an award of fees within thirty (30) days of the entry of this Order.  The Respondents shall respond within fourteen (14) days of the filing of the motion and the Petitioner may reply within seven (7) days of the filing of the opposition.

**IT IS SO ORDERED.**

Dated:  December 8, 2025

Honorable Barry Ted Moskowitz
United States District Judge